Our next case is Littlejohn v. School Board of Leon County Florida. Our next case is Littlejohn v. School Board of Leon County Florida. All right, Ms. McAllister, whenever you are ready. Thank you, Your Honor. May it please the Court. I am Mary McAllister with Child and Parental Rights Campaign, representing the plaintiffs' appellants Mr. and Mrs. Littlejohn. My co-counsel, Bernadette Broyles, is also here. The decision court denied to Littlejohn the right to proceed with what the court acknowledged was a plausible claim for interference with the fundamental parental rights because the court wrongly concluded that binding precedent mandates that all substantive due process cases must allege conduct that shocks the conscience. Well, all that challenge executive action, correct? Well, that is what the Sacramento court said. However, the judge's order, he said all. Well, what do you do? So maybe you have two arguments in response. Maybe you say our challenge here really isn't to executive action, it's to legislative action. We can talk about that. But if your challenge is to executive action, then what do you do with footnote eight of Sacramento? Which seems to me, I've read it time and time and time and time again, and it seems to me to say that challenges to executive action, this may or may not make any sense at all, but challenges to executive action entail a threshold inquiry whether the conduct shocks the conscience. If it doesn't, the case is over. If it does, then maybe you go on to some kind of Glucksberg analysis to see if there's some right. But at the outset, you've got to ask the shocks the conscience question. For executive action, that's what the Sacramento case says, yes. Okay, and so then you're not contending that if this is a challenge to executive action, anything other than the shocks the conscience standard should apply? What we are saying is that shocks the conscience does not apply in a fundamental rights context. But does Sacramento leave that open to you? I mean, as I read footnote eight of Sacramento, it's sort of like an across-the-board rule. If there's a challenge to executive action in a substantive due process case, then the standard is shocks the conscience. I don't read it as broadly as that, Your Honor, because in subsequent cases, the Supreme Court continued to have the dual consideration of his fundamental right or shocks the conscience. And so can you tell me which case you're thinking about particularly? Chavez versus Martinez. Okay, so that's what I thought you were going to say. And I'll confess, like I've read Chavez as well. And it is kind of hard to make sense of what the three justice plurality opinion is doing there. And you might also have read in your prep a subsequent post-Chavez decision that Justice Gorsuch wrote when he was on the Tenth Circuit where he said, I've read Lewis and Chavez, and frankly, I have no idea what Chavez is up to. All I know is that as a lower court, Chavez doesn't overrule Lewis, and I'm stuck with Lewis. So why aren't we in Gorsuch land where we say, yeah, we've seen Chavez, but we don't quite know what to make of that. It's just three justices anyway. You know, Sacramento is a majority opinion, clearly, expressly pushing back against Scalia's concurrence, urging the Glucksberg analysis, and the Court seems to say, nope, when there's an executive action, it's just a shocks the conscience standard. Well, it does not go as far. That footnote 8 does not go that far. And other cases. I mean, we've actually construed it to go that far, haven't we, in Maddox? Well, but not in Waldman v. Commissioner, which also references McKinney v. Pate, in which this Court has said that they're alternate tests. If you have a fundamental right violated, then shock the conscience doesn't apply. If you don't have a fundamental right, then you apply shocks to conscience. It doesn't make any sense. I speak for myself. If there's a fundamental right, there's no sense in having shocked the conscience. And what in the world would the evidence be of shocking the conscience? One judge says it shocks my conscience, another says it doesn't shock it. Both of them say there's a fundamental right. And I think the Lewis discussion about shocking the conscience, they never got there. It was a high-speed police chase, and Justice Souter went through, I think he wrote the opinion. Yes. He did. Yes. And went through the arbitrary nature in executive functions under due process. Due process has always had a home in arbitrary decisions by the government, because the government's basically exercising police power, and the argument is it's way beyond your authority. But putting all that aside, I've read all these shock the conscience cases, every one. I can't find one, not one, that ties the fundamental right to shocking the conscience. It's not enough to have a fundamental right. You've got to shock the conscience. Do you know of any? Well, we believe that if there's a fundamental right and the- No, what I mean is, are you aware of any cases where there's a fundamental right, substance of due process fundamental right, raising a family and that sort of thing, and then on top of it there's no claim unless it shocks the conscience? No. In fairness, is that not what Maddox says? I mean, Maddox, the court acknowledges that this case, you know, And then it says, Maddox did say that. Maddox, of course, they did not reach the issue of whether there was a substantive due process violation. They said it didn't shock the conscience, though, right? I mean, in that case, and in that case, they actually took the child from the parent. I mean, that seems way more extreme than what happened here, and if we said that in that case we're going to apply the shock the conscience analysis, then it seems like that issue is already decided. Well, again, it has to be the context of each case, and the context of Maddox is very different. Maddox was clearly an executive action, and it was clearly more like Lewis in the fact that you had a social worker who had a medically fragile infant. You had a mother who was not able to care for this medically fragile child. The social worker has to make an immediate decision. Who do I place this child with? Right, but that went to whether it shocked the conscience or not, right? I mean, and so it didn't go to whether that framework governs. And here, of course, the question is whether that framework governs, and it seems like that was the question in Maddox. We said that framework governed, and we cited Sacramento. Right, and again, it was in an executive. But isn't this also an executive? I mean, isn't what's left of your challenges, aren't they all executive actions as opposed to legislative? And if not, why not? Because it seems like the application of the rules to AG are executive and not legislative actions. Well, looking at the definition of legislative versus executive that was put out in McKinney v. Pate and has been followed since then, and again, it has to be context. It can't be in a vacuum. And according to McKinney v. Pate, legislative actions are actions that affect essentially the whole community, the whole city, whatever universe you're in. And it's something like broad-ranging executive regulations. Well, that's what this 2018 guidance. Okay, but two things about that. The first thing is the district court ruled that any injunctive relief was moot. And the second thing is you specifically seem to have waived that issue when you said in your filing that defendant's course of conduct, not the contents of the 2018 guide, is the focus of your action. Why didn't that waive that issue? Well, that particular statement in our opposition to the motion to dismiss at pages 8 and 9 was specifically responding to the defendant's question, their statement that our whole case was moot because of the subsequent rescission of the guidance and the subsequent action by the Florida legislature. But then it seems like you confirmed that. No. I mean, you confirmed that you weren't, well, let me put it this way. You confirmed that you weren't, that you were waiving anything to do with the 2018 guide. That is not what our argument was. Our argument was it's not moot because the 2018 guide governed the time period we're talking about here, 2020 to 2021. And where can I look in your filing to see where you preserved that issue? In our opening brief, I believe we mentioned, I believe we talked about that, that it's not moot. Again, in our opposition to the motion to dismiss, we argued it's not moot and the conduct can't be divorced from the guideline that they were operating under. The difficulty I find is with Judge Rosenbaum's question. You say the conduct can't be divorced. And yet in that filing, you said it is the defendant's course of conduct, not the contents of the guide, that is the focus of our challenge. And so you are divorcing those two things. Like strategically, I understand you needed to get out from underneath the mootness determination. And so, you know, for good and sufficient reasons, you said, oh, no, no, no. You've misunderstood. Our challenge isn't to that now defunct guide. It's to the course of conduct. So you have divided those things. Respectfully, no, Your Honor, because we could not, you know, we were saying the guide, whatever the content of the guide was that was presently being alleged by the defendants was not, because they were focusing on, well, the guide, this guide says this, this guide says that. We're saying, no, the conduct of the defendants, we didn't say in accordance with the guide, but they had the discretion. They had the guide. They were told they had to follow it. And they followed it. And so their conduct was part and parcel of the 2018 guide. And they operated in accordance with the 2018 guide. Can I ask you one, I know that your time has expired, but can I ask you one more question just sort of circling back to the fundamental rights question? You know, the Supreme Court has been on a tear about making sure that substantive due process is sort of like appropriately reined in. And one of the ways in which the Court has done that is to say, look, we need a very careful description of the right. So it's not enough to say, you know, sort of bodily autonomy or something, right, in the privacy line of cases. Likewise, in this line of cases, is it enough for you to say just sort of care, custody, and control of children, or do you need something more specific? We need much more, and we have something more specific. And even the district court judge said it. We're saying there was an interference with the Little Johns' fundamental right to make mental health decisions for their child. In fact, that the district, after the Little Johns informed the district, we know our daughter has these questions. We have hired a private counselor. She is working with our child. Nonetheless, then, the district interfered with that, and the district court judge said that. He said it can't be said they didn't interfere, but he just decided not to go that route with the case. But he agreed that there's a plausible claim here that they interfered with their right to make mental health decisions for their child. They had done that, and then the school just came in and didn't talk to the parents at all and rode roughshod. With Judge Rosenbaum's permission, can I ask one more? Of course. So the one thing we haven't talked about at all yet is qualified immunity. Yes. And so without sort of belaboring the argument, but can you really say that this right, whatever it is, was clearly established if the law in our circuit, the Supreme Court and in our circuit, to put it charitably, is a disaster area? There is Lewis trying to figure out what in the world footnote 8 of Lewis means. There is, you know, on the one side, there are Arnold and Maddox. On the other side, there's DaCosta and Waldman. I mean, I can't even make sense of all of this. I had to make like a decision tree to try to figure out where all the law goes. How would the school board officials have known? Well, Arnold was very, very close, and it was not an action like Maddox where you had a fragile child and a social worker. You had school districts and school counselors who were counseling children and were counseling them about mental and mental health issues and were telling them not to tell their parents. But Arnold, right, I mean, Arnold carves out this caveat where it says like, look, to be clear, we're only talking about coercion. And the court says, you know, we are not constitutionally mandating that counselors notify the parents of a minor who receives counseling regarding pregnancy. We hold nearly that counselors must not coerce minors to refrain from communicating with their parents. The decision whether to seek parental guidance absent law of the contrary should rest with the sound discretion of the minor. This case fits squarely within that caveat. Well, not really because the question is are we leaving the decision of something that's consequential. I mean, it's not their identity and how they're going to be identified. It's very consequential. It's life-altering potentially. And leaving that in the hand of a child, there needs to be an adult. And PARM and numerous cases from the Supreme Court have upheld that for years, that it's the parents who have to have that right. Yeah, so I understand sort of the substantive point you're making. I guess the question that I have most immediately right now is about clearly established law. And I just don't see how you can get there given the kind of the entire landscape, which I think is just sort of pockmarked with, you know, sort of seemingly contradictory statements. Well, we look at it in, of course, three ways to establish clearly established.  Then you have conduct that you have a broad statement of principle within the Constitution that clearly establishes it. Well, we have that. We have W. Dodds. We have Washington and Glucksberg. We have Wisconsin v. Yoder. We have PARM, which talks about substantive proxile. We have all these cases standing for the proposition that parents have the fundamental right to make these decisions for their children and cannot be interfered with by the state. Thank you, counsel. Yeah, I got it. Thanks for letting me, indulging me in that last question. Thank you. Thank you very much. All right, we'll hear now from Mr. Slanker. Thank you, Your Honor. May we support. Jeff Slanker. I'm here with my law partner, Terry Harmon, and Todd Stubbski. He's the Director of Risk Management for the Leon County School District. We have the pleasure of representing the defendants at police in this case. And I want to kind of build off of the discussion that the court's been having already with my colleagues, Ms. McAllister, and the notion, I think it's really the threshold notion that the plaintiffs argue in this case that the shocks to conscience standard. Mr. Slanker, how do you prove that? How do you prove that it shocks the conscience? What's the evidence? Well, you know, I think that it's. . . You're the plaintiff, and you're alleging shocks of conscience. What do you put into evidence? And somebody else is a judge. The judge has to decide. It's harder than negligence. It's harder than gross negligence. It's harder. . . We've been wrestling with this spectrum from negligence all the way to intentional conduct, somewhere in between. It's no man's land. So where is shock to conscience in this spectrum of evidence? Yeah, absolutely. And, you know, I think it's. . . I like the way that you characterize it in terms of. . . Let's assume there is no fundamental right involved, no fundamental liberty interest that the Supreme Court has recognized. Okay. So how do you decide shock to conscience? I think that in the scenario that you're proposing, the way that I read the law and the evolution of the law in this area, in this circuit, the Supreme Court, and other circuits, based off of footnote eight. Well, nobody has described exactly what the elements of, I can find, that shock to conscience are. Yeah, yes. I mean, there are a lot of opinions. Sure. There are court cases, and they allege shock to conscience, and the court has gone through shock to conscience and said, this doesn't work. So do we cite what the evidence of shock to conscience is by deciding what isn't shock to conscience? You're right that that is the way that I read some of the cases, the cases in the papers, the Neal case, the Dix case. Certainly. I think that that is somewhat of the approach the court is taking to kind of wrestle with some of these difficult issues of, okay, what has to be proved, what has to be shown and established to meet that shock to conscience burden. And I think what we would submit, Your Honor, is that the way that you prove that evidence that you establish, we know it's more than mere negligence. We know that that doesn't reach the level of being a judge. But where in the range of conduct does shocking to conscience fit? Your Honor, what I would argue— And who is the decider? Your Honor, I think that there's a threshold. I think that the court is the decider if there's a threshold minimum. Okay. The judge has to decide whether there's a case for shocking to conscience. Okay, and then give it to a jury? Your Honor, I think that— What's the instruction of the jury look like? Your Honor, I think that that ultimately depends on— How do you instruct the jury on shock to conscience? Your Honor, I think that what we would submit is we know that it's more than mere negligence. We know that it's more than—we would submit that it's more than deliberate indifference or recklessness. What we would submit is that there has to be some level of intent, certainly intentional conduct, but also malicious conduct and— Intentional is not enough. Your Honor, what we would submit is— Because that falls into the realm of gross negligence and arrest because all those are intentional acts. Your Honor, we would submit that it's got to be something akin to malice. It's got to be the purpose of the executive act is to oppress. The purpose of the executive act is to interfere with the purpose. That's not uniformly the case, right? I mean, the way that I read Lewis is to say there is this thing. I agree with Judge Troflat that it's difficult to get your head around what shocks to conscience should mean. But there's this thing called shocks to conscience. There is then within shocks to conscience a range of things that might meet the standard. Negligence categorically beneath that range, forget about it. Specific intent to do harm, sometimes, like oftentimes, that might be good enough, although the court seems rarely to find it. Somewhere in between something like deliberate indifference, sometimes yes, sometimes no, it depends on whether or not this is a circumstance that permitted deliberation, right? Lewis is not a case that permitted deliberation. It was a high-speed chase. So the court says deliberate indifference is not enough. We've got to have something like specific intent to cause harm. We don't find it. But in a case like this, I mean, this isn't a high-speed chase case. Why wouldn't deliberate indifference be sufficient to meet the shocks to conscience standard here? What this court said in Nix, in Hernandez, in a lot of the cases that have been issued is, and you know it's, in many cases, this court has said we doubt, and sometimes outright said that deliberate indifference can never be the standard in a noncustodial setting. And that's really what Lewis focused on. When Lewis had engaged in this discussion about, well, you know, there's a scenario with a high-speed chase. That doesn't permit deliberative contemplation. When it talked about deliberate indifference, it talked about it specifically in the context of a custodial relationship. And it explained this is why that is different. And it's different in a key way and taking apart, right, that the Supreme Court has already said deliberate indifference is sufficient for establishing an Eighth Amendment violation of deliberate indifference to an inmate's medical needs and what that means for incorporation. I agree with the panel in saying this is a very complicated area of the law. But what the court in Lewis said is the custodial and noncustodial distinction is so important because, and this is from the case, in a custodial situation of a prison, forethought about an inmate's welfare is not only feasible but obligatory under a regime that incapacitates a prisoner to exercise ordinary responsibility for his own welfare. When the state takes a person, this is from the Deshaney case, into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The ability of someone in a custodial relationship to affirmatively advocate for themselves, they're subject to the control of the state in that circumstance. And I think that's the key distinction here. My colleagues didn't really address that distinction in the reply brief. But I think that's the distinction where if you have a custodial relationship, maybe in that circumstance deliberate indifference might be enough. We know it's enough in the Eighth Amendment realm. So why wouldn't it be enough in the substantive due process realm? But this Court has never said that deliberate indifference is sufficient to state a claim in a noncustodial setting. I don't think there's a dispute that this was a custodial setting. Let me ask you a follow-up question about Lewis. And this goes to a question that Judge Choflat asked earlier. I was pressing your adversary about sort of what I'll call the plain language of Footnote 8. I mean, Footnote 8 is written in broad terms. It seems to me to speak to executive action generally and to prescribe, for better or worse, a shock to the conscience standard for all substantive due process challenges to executive action, which I take this case to be. But Judge Choflat, I think, makes a very good point in his questions to your adversary, that you could read Lewis to be limited either super narrowly to high-speed police pursuit cases, you know, the way the Court framed the question presented and the nature of the circuit split and the holding at the end of the case. Those were all in terms of like in pursuit cases we hold that thus and such. Slightly more broadly, you might read Lewis to say, this is really limited only to those cases that don't implicate fundamental rights and that exist in what I'll just call sort of the vast residuum of other, you know, sort of claims. Because the Court does talk about, as Judge Choflat's question points out, arbitrariness. You know, sort of arbitrariness being sort of the baseline of due process. And if that's all Lewis is really about, then maybe it doesn't speak to a case that clearly implicates what the Supreme Court has called a fundamental right. So how do you – how do you think – what's the better reading of Lewis? That you just got to take footnote 8 at face value or that you should read footnote 8 in the context of everything else the Court's saying, which seems to be somewhat narrower? I think that you've got to take footnote 8 for what it is. I think that you've got to take it to – and I think that – I understand what you're saying in terms of the specific facts of that case. But I think the context of that case makes clear that the shots to conscience standard should apply to any allegation of an executive deprivation of a substantive due process right, and that is because what the Court talked about in the Lewis case from a – I don't want to say – I don't want to say like a policy perspective. I don't think that that's quite right, but you're dealing with an area of the law that is untethered. I think it's fair to say. I think the cases have said that it's untethered to the plain language of the Constitution. I think I might have said that over and over and over and over. I think you might have said that. Are you familiar with Waddell? I am, Your Honor. Yeah, Waddell's been cited 82 times by our Court. And Waddell, the fellow is in a jail. You're familiar with the facts. I am. He's in jail, and he gets drunk and driving, and they pick him up and put him in another jail. He's cooperating with the Henry County Sheriff's Office as an undercover guy, and he moves all around the place. Sometimes he's out on release from the jail, sometimes not. Ultimately, he gets in a car accident, and there's a woman killed, and he's drunk. And we spend days talking about shocking the conscience in a case like that. And so we got that phrase, shock the conscience, in Waddell, and we put it in everything we could write and cite Waddell. I mean, you agree that the facts of that case are preposterous in terms of a constitutional right? Your Honor, I don't remember all the facts. It's just a plain old tort case. Your Honor, I don't remember all the facts of the Waddell case. I apologize. Well, I just mentioned it to illustrate the extent to which we've taken those words, shock the conscience, and we have written all over the world about them in all kinds of cases. So it's meaningless. Your Honor, I agree with that. I think that the way to think about it and the bigger notions from Lewis is that this shocks the conscience test is really something that provides guardrails here. It prevents judges from interpreting the Constitution in a way in which it, you know, creates a new constitutional right that is not in the language of the text of the Constitution to write a wrong. Going back to Lewis, we know how to decide whether something is arbitrary and capricious, don't we? Your Honor, I think— We know when there's an executive order or some such thing which has no basis in the police power, say, it's a state order, just none at all, so it's just arbitrary. We know how to do that. Your Honor, I think that— And we do that all the time. Sure. Well, we did it also when we put substantive due process in the takings cases. We had Fifth Amendment takings cases, and then ultimately the Supreme Court said it's a substantive right to take your property. But we know how to do that. Yeah, Your Honor. I think that, you know, it's interesting with the takings cases, those are street creative rights. When you add up all the shock of the conscience cases with the one case that Judge Anderson wrote having to do with the abortion. Yes. That's the only case I can find where shocking the conscience is even discussed in the same breath as a fundamental right. Your Honor, you're talking about the Arnold case. You know, that case didn't necessarily, from my reading of it, didn't necessarily talk explicitly about the shock of the conscience standard. It predated Lewis by some years. I agree with Judge Anderson. Maddox is closer, right? Maddox is closer, and I think that that really ties back to kind of the ultimate point of the law in this case is that it couldn't be any clearer in the Maddox case. This exact liberty interest was being alleged to have been infringed. And this court said that one must show shocks of the conscience on the part of the executive to be able to meet that. Can I ask you a question? And this is just maybe it's a meta question. It's a first principles question. It's a question that I've asked out loud in a concurring opinion in a case called Hillcrest. But does that make any sense? Does it make any sense that, like, for whatever we think about substance of due process, the due process clause itself just refers to states, right? And so, you know, no state shall. And so somehow we've bifurcated the world of violators between legislative violators and executive violators. And if they violate the same thing, the legislature is basically always going to lose, right, effectively. Strict scrutiny, strict in theory, fatal in fact. The legislature is going to lose if it intrudes on this parental right or whatever. The executive is basically always going to win because shocks of the conscience standard is never met. That just doesn't make any sense to me. And in fact, it may have things like completely backwards in the sense that the executive has, like, much more discretion to be out there just sort of like willy-nilly violating people's rights. So why would we have done that? Why would the law sanction this binary where legislatures lose when they violate fundamental rights, executives win when they violate fundamental rights? Your Honor, to me, the legislative executive distinction is important just in that it's different if there's a challenge to, you know, a law that's been enacted, a facial challenge to a law that's been enacted. Is it just because it impacts more people? Like it's a legislative action doesn't maybe violate one person's rights. It violates lots of people's rights at the same time because it applies broadly. Is that why we care more about legislative violations than executive violations? Your Honor, I think that might be fair. I don't know the answer to that question one way or the other. I think that what the notion that this court and I think maybe the importance of the shots to conscience test and what we would submit is the importance of the shots to conscience test is that it provides guardrails on the evaluation of executive conduct to avoid stepping in the shoes of state tort law, to avoid the judiciary from kind of arrogating the rights of the legislature to enact the policy preferences that are responsible to their citizens. And, you know, in a certain way, you can say that kind of happened here. We have the Florida Parliamentary Bill of Rights Act that's been enacted. The legislature has, according to the will of the people through their representatives, expressed statutorily what they feel is the correct view on this. And what we would say, Your Honor, we would submit, Your Honor, is that without this kind of framework and why the distinction is important, you begin to constitutionalize everyday frequent conduct and haul government officers in to court to defend that in a constitutional magnitude. Can I ask, with Judge Rosenbaum's indulgence, one just kind of blocking and tackling question? Of course. So I know that on behalf of, we've talked a lot about the merits. On behalf of the individual defendants, you're also raising a qualified immunity defense. I get it. I don't think we need to get into it, but I understand. Is any part of your defense of the school board itself that the requirements of Monell liability have not been met? Or is the school board's lone defense there was no violation here? Your Honor, all we've argued in the briefing is that there was no underlying violation. Okay. So Monell's not an issue. It's not an issue at this point. But I just wanted to make sure. That's it. You can see that there's been stated a Monell violation or that it can be proved. But what we're saying is there can't be derivative Monell liability without an underlying constitutional violation. Got it. Thank you. That's helpful. All right. Thank you. I appreciate your indulgence. Thank you, Your Honor. Thank you, counsel. I think we brought you over, so that's just fine. All right. We'll hear again from Ms. McAllister. Yes, Your Honor. A couple of points. In terms of Lewis, one of the things to note about Lewis was that Justice Souter cited in approval the Salerno case. And the Salerno case set out the dual fundamental right or shock to conscience. And Judge Souter cited that to say, yes, there is a fundamental right or shock to conscience. And then, of course, went on to fine-tune the shock of conscience consideration in the facts of that case. Can I ask you a question about Lewis? Do you think Lewis could be read as a fundamental rights case, fundamental right to life? Mr. Lewis's life was snuffed out. Why isn't that just as fundamental a right as the right of the parent to direct the upbringing of his or her children? Well, I think it goes back, again, to the executive versus legislative point, is that, again, you had a high-speed chase. You had a police officer having to make a split-second decision. And so that would be where a shock to conscience consideration would be appropriate because that's the whole reason for qualified immunity and shock to conscience, is to recognize that you have situations in which first responders, social workers, as in Maddox, have to make critical decisions quickly. And they can't be worried about whether they're going to be sued. So your point isn't really – I don't mean to put words in your mouth. But you might say, look, I might concede that Lewis was a fundamental rights case, fundamental right to life. But what really drives Lewis is the fact that Lewis is a high-speed police pursuit chase, a split-second decision kind of case. It's not an all-executive-actions kind of case. So we just sort of come back to the difficulty of reading Lewis and trying to figure out what Lewis – is Lewis a sort of an all-executive-action case or a some-executive-action case? Right. That's what it comes down to. And if we were arguing some executive action, I know that the court below says it's all. But either way, we, of course, argued in our briefs that this was an executive action. And, of course, we don't even get there because of the fundamental right. And, of course, again, Chavez left Cyrus Milano saying fundamental right or shock to conscience. Justice Souter did not dispute that, didn't come back in his opinion and dispute that. And then this court, since Lewis, has continued to say that proving a violation of a fundamental right or proving there's a shock to conscience are two independent theories of liability. I guess in fairness, again, disaster area, post-Lewis, we've said both things, right? In Waldman, we have said exactly what you just said we've said, correct. In Maddox, we've said exactly the opposite. And then again, of course, we go to the difference in the context of those cases. And many of the cases that the district cited in their brief, these school court cases, are wholly different from this. And the judge said that. The judge said these were cases in which a student is suing basically for an assault against him or her by school staff. That is not this case. This case is the parents exercised a fundamental right that's been established for 100 years. They exercised it. They told the school they exercised it. And the school disregarded that, didn't even talk to them about it, and let a 13-year-old emotionally underdeveloped child make these consequential decisions. Okay, thank you, counsel. I think we have your case. Thank you very much. Okay, thank you. Thank you both. We'll be in recess until tomorrow. All rise.